**Timothy C. GUNDERSON, d/b/a Alaska Contract Motor Express, Appellant,**

v.

**UNIVERSITY OF ALASKA, FAIRBANKS, Appellee.**

No. S–7130.

Supreme Court of Alaska.

Aug. 9, 1996.

---

Lloyd I. Hoppner, Hoppner & Paskvan, Fairbanks, for Appellant.

James A. Sarafin, Moran & Sarafin, Anchorage, for Appellee.

Before COMPTON, C.J., and
RABINOWITZ, MATTHEWS, EASTAUGH
and FABE, JJ.

*OPINION*

FABE, Justice.

I. *INTRODUCTION*

This is an appeal from the decision of the superior court upholding the University of

Alaska's award of a coal hauling and unloading contract to Royal Contractors. We affirm.

II. *FACTS AND PROCEEDINGS*

The University of Alaska, Fairbanks (UAF or the University) generates its own power and produces heat for the campus buildings by means of a coal-burning power plant. For many years the University obtained coal for its power plant through the Alaska Railroad Corporation (ARRC), which delivered the coal in rail cars to a siding next to the power plant. This method of delivery required UAF employees to unload the coal into the hoppers. In 1992 Timothy C. Gunderson, d/b/a Alaska Contract Motor Express, (Gunderson) submitted an unsolicited proposal to UAF, offering to truck coal to UAF and to deliver the coal directly into the coal hoppers at the UAF power plant.

UAF entered into a sole-source contract with Gunderson in the fall of 1992. Upon learning of this contract, ARRC filed a formal written protest with UAF, asserting that the sole-source contract violated both state and university procurement codes. In response to the protest, UAF appointed a hearing officer who determined that the sole-source contract violated competitive contracting requirements.[1]

UAF responded to the hearing officer's decision by issuing Request For Proposal (RFP) number 93P0035TK. A preproposal conference was held between UAF and interested contractors.

The criteria for evaluation and award of the contract were set forth in the RFP as follows:

Award will be to the low responsive, responsible offeror whose offer conforms in all essential respects to the solicitation requirements, price and other factors specifically set forth herein considered.

1. Gunderson filed suit in response to the hearing officer's finding. The superior court dismissed Gunderson's claims against ARRC, ruling that ARRC was immune from suit under the *Noerr–Pennington* doctrine. This court concluded that the superior court properly granted summary judgment in favor of ARRC. *Gunderson v. University of Alaska, Fairbanks,* 902 P.2d 323 (Alaska 1995).

. . . .

The University may award a contract on the basis of initial proposals received, without discussions. Therefore, each initial proposal should contain the offeror's best terms from a cost or price and technical standpoint.

Discussions or negotiations may be conducted with all offerors in the competitive range. If "Best and Final" offers are requested, they will be evaluated against the same criteria as were the initial proposals.

The RFP also requested information describing the offerors' proposed methodology and a checklist of requirements for contractors to be considered responsive and responsible, as well as a detailed pricing schedule and specifications for performance. Following the pre-proposal conference, UAF issued an amendment to the RFP clarifying issues raised at the conference.

There were no objections to the RFP, and none of the contractors, including Gunderson, complained or asserted that UAF had failed to set forth adequate criteria for the evaluation of the proposals and determination of the final award.

In response to the RFP, UAF received nine proposals, including Gunderson's. Royal Contractors (Royal) offered the lowest price at $7.82 per ton of coal delivered and unloaded. Alaska Pacific Transport, Inc. offered the second lowest price, at $8.00 per ton. Haulin Hanna, Inc. proposed a price of $8.12 per ton, while Gunderson was the fourth lowest proposer at $8.18 per ton.

As permitted under the competitive proposal method of contract selection, UAF requested from the qualified offerors further proposal information and clarification, including price confirmation. This request did not reveal the prices offered by other contractors, nor did it disclose any recipient's ranking in relation to the other proposals received. In response, Royal offered a price reduction to $7.57 per ton.[2] UAF determined that Royal was the low responsive and responsible proposer, and a Notice of Intent to Award Contract to Royal was issued.[3]

Gunderson timely protested the notice of intent. Gunderson's protest was denied, and he appealed to the University's chief procurement officer. The chief procurement officer concluded that Gunderson had failed to demonstrate any factual or legal errors that would substantiate his appeal.

Gunderson appealed this administrative decision to the superior court. The superior court upheld the chief procurement officer's determinations and the denial of Gunderson's protest. In reaching this conclusion, the court found that (1) UAF did not violate the state procurement code or its own procurement regulations and procedures by using the RFP procedure to award the coal hauling and unloading contract at issue; (2) UAF's RFP included sufficient evaluation factors to satisfy the requirements of state law and UAF's own regulations; (3) Gunderson had standing to challenge the responsiveness of Royal's proposal as it relates to the question of UAF's implied duty to consider, fairly and honestly, all of the proposals; and (4) Royal's proposal was responsive as it did not contain any variance that would give it a substantial advantage over any of the other contractors.

This appeal followed.

## III. DISCUSSION

Gunderson asserts that UAF disregarded the rules and regulations governing the award of public contracts. He raises the following issues on appeal: (1) the RFP issued by UAF did not contain any evaluation factors, in violation of AS 36.30.210(b) and UAF Procurement Regulations and Procedures P–3–064; (2) the proposal of Royal, the successful bidder, was not responsive to the terms and specifications of the RFP; and (3) Royal amended its proposal after the due date in violation of AS 36.30.240 and UAF

---

**2.** Alaska Pacific Transport, Inc. and Gunderson did not change their prices in response to the request for clarification and price confirmation; however, Haulin Hanna, Inc. increased its price to $13.82 per ton, changing Gunderson's ranking to the third most favorable proposal.

**3.** The contract was formally awarded to Royal on September 23, 1993.

Procurement Regulations and Procedures P–3–081 by further reducing its price.

### A. Standard of Review

■ In an appeal from a judgment of the superior court acting as an intermediate court of appeal, we independently review the agency decision. *Cook Inlet Pipe Line Co. v. Alaska Pub. Utils. Comm'n,* 836 P.2d 343, 348 (Alaska 1992).

■ When an appeal of an agency decision involves a question of statutory interpretation, this court applies one of two standards. "The 'rational basis' test is used when the issue involves agency expertise or the determination of fundamental policies within the agency's statutory function." *Public Employees' Local 71 v. State,* 775 P.2d 1062, 1063 (Alaska 1989). This standard is generally applied in two circumstances:

> First, ... where the agency is making law by creating standards to be used in evaluating the case before it and future cases. Second, ... when a case requires resolution of policy questions which lie within the agency's area of expertise and are inseparable from the facts underlying the agency's decision.

*Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987) (quoting *Earth Resources Co. v. State, Dep't of Revenue,* 665 P.2d 960, 964 (Alaska 1983)). However, when the statutory interpretation does not involve agency expertise, or the agency's specialized knowledge and experience would not be particularly probative, this court independently reviews the decision and substitutes its own judgment. *Public Employees' Local 71,* 775 P.2d at 1063.

■ The superior court found that the applicability of UAF's procurement regulations and procedures to the award of a coal hauling and unloading contract was a question of statutory interpretation not involving agency expertise, since the regulations and procedures were developed in accordance with the requirements of the State Procurement Code in AS 36.30.005—.995. The superior court then substituted its judgment in the resolution of the issues presented.

UAF asserts that the superior court erred in substituting its judgment for the conclusions of the chief procurement officer and maintains that the officer's determinations should be upheld if they meet the "reasonable basis" test. *Chris Berg, Inc. v. State, Dep't of Transp. & Pub. Facilities,* 680 P.2d 93, 94 (Alaska 1984) ("The determination by a public agency of the responsiveness of a bid is within the agency's discretion, subject, on judicial review, to an ascertainment that there was a reasonable basis for the agency's action.").

We conclude that the appropriate standard for reviewing the decision of the University's chief procurement officer is the reasonable basis standard rather than the substitution of judgment standard employed by the superior court. Under this standard, we seek to "determine whether the agency's decision is supported by the facts and has a reasonable basis in law, even if we may not agree with the agency's ultimate determination." *Tesoro Alaska Petroleum,* 746 P.2d at 903.

### B. The Request for Proposals

■ Gunderson claims that UAF violated the Alaska procurement code and its own regulations by failing to disclose relevant evaluation criteria in the RFP as required by state law[4] and UAF procurement regulations. Specifically, Gunderson claims that the RFP failed to list the factors that were going to be considered by the procurement officer in evaluating the proposals and omitted information about the relative importance of price and other evaluation factors.

AS 36.30.200, which sets forth the competitive sealed proposal method for awarding an "agency contract," does not apply to the Uni-

---

**4.** Gunderson refers to AS 36.30.210(b) which provides:

> A request for proposals must contain that information necessary for an offeror to submit a proposal or contain references to any information that cannot reasonably be included with the request. The request must provide a description of the factors that will be considered by the procurement officer when evaluating the proposals received, including the relative importance of price and other evaluation factors.

versity because AS 36.30.990(1) specifically exempts the University from the definition of "agency" under the state procurement code.[5] Furthermore, under AS 36.30.005(c), "all rights, powers, duties and authority relating to the procurement of supplies, services, professional services, and construction" are delegated to the University's Board of Regents. However, this provision also states that "[t]o the maximum extent possible, authority granted under this subsection shall be exercised in accordance with this chapter." Additionally, the Board of Regents is directed to "adopt regulations ... that are substantially equivalent to the regulations adopted by the commissioner of administration." AS 36.30.005(c).

The requirements governing the issuance of an RFP are contained in the University's Procurement Regulations and Procedures (PR & P). PR & P 3–064(2) requires an RFP to include (1) the purchase description; (2) the evaluation criteria; (3) the delivery or performance schedule; and (4) the inspection and acceptance requirements that are not included in the purchase description. We conclude that in addition to a purchase description, the RFP contained all of the requirements, including a statement of the criteria for evaluation and award.

RFP No. 93P0035TK provides in part:

The University of Alaska Fairbanks is soliciting offers for the hauling and off loading of coal for the UAF Power Plant. Transportation services are to be provided from mine mouth, Healy, Alaska to the UAF Power Plant. Coal shall be off loaded into the coal receiving facility located below the railroad tracks at the UAF Power Plant facility. The successful offeror shall provide all labor, equipment and supplies necessary to execute the terms and conditions contained in this RFP.

The University requires from 110 to 220 tons of coal per day depending on load and weather conditions. Hauling and off loading services shall be performed in support of continuous operation of the Power Plant. The contract shall commence upon award

and shall continue until June 30, 1994, with one (1) year renewal options for up to seven (7) additional years, ending not later than June 30, 2001.

We hold that the foregoing satisfies the requirement of a "purchase description" for purposes of P–3–064(2) as well as explicitly describing the "delivery or performance schedule." The RFP also contains evaluation criteria, including price, responsiveness and responsibility:

Subject to provisions of section 11, Instructions to Offerors, and the terms and conditions contained herein, an award will be to a single offeror. Award will be to the low responsive, responsible offeror whose offer conforms in all essential respects to the solicitation requirements, price and other factors specifically set forth herein considered.

. . . .

The University may award a contract on the basis of initial proposals received, without discussions. Therefore, each initial proposal should contain the offeror's best terms from a cost or price and technical standpoint.

Discussions or negotiations may be conducted with all offerors in the competitive range. If "Best and Final" offers are requested, they will be evaluated against the same criteria as were the initial proposals.

Even if the evaluation criteria listed in the RFP were deficient in some unexplained respect, Gunderson has "failed to demonstrate that such error prejudiced [his] proposal in comparison to others, since each proposal received identical treatment." *King v. Alaska State Hous. Auth.,* 512 P.2d 887, 894 (Alaska 1973) (holding agency's failure to assign specific grade to earthquake risk did not deprive evaluation of proposals of reasonable basis); *see also Fairbanks N. Star Borough Sch. Dist. v. Bowers Office Prods., Inc.,* 851 P.2d 56, 59 n. 3 (Alaska 1993) (finding consideration of factors only implicitly included in RFP justified).[6]

---

**5.** AS 36.30.990(1) states that " 'agency' ... does not include (i) the University of Alaska."

**6.** Gunderson also acquiesced to the RFP process and did not object until after he learned that the

A review of the record confirms the University's assertion that the RFP contained the evaluation factors required by P–3–064. We therefore affirm the superior court's decision holding that UAF's RFP included sufficient evaluation factors to satisfy the requirements of state law and UAF's own regulations.

## C. Royal's Proposal

### 1. Responsiveness to Terms and Specifications

■ Gunderson contends that Royal's proposal was not responsive to the terms and specifications of the RFP. Gunderson complains that Royal's successful bid proposed the use of "end-dump containers" while the RFP in Specification No. 2, Scope of Services stated:

> The coal must be delivered in bottom dump containers to enable dumping through a grill . . . and into a grizzly located below the railroad tracks. Services shall be performed in strict accordance with these specifications, and all terms and conditions of the contract.

Gunderson argues that the competition for the contract was not equal among the various trucking companies, since the rest of the bidders complied with the specifications in the RFP and submitted their bids based upon the use of bottom-dump containers.

UAF concedes that the type of truck proposed by Royal, a self-unloading trailer that emptied through the rear by means of a conveyor belt, was not the type of trailer initially contemplated by the University. However, UAF points out that "the reason for the bottom-dump trailer specification was

that clearance in the University's facility did not allow raising a conventional end-dump trailer for unloading purposes."

■ It is well settled that a public entity "is required to reject bids which vary materially from the specifications set forth in the published request for proposal." *McBirney & Assocs. v. State*, 753 P.2d 1132, 1136 (Alaska 1988). We have previously held that "[a] variance is considered material if it gives one bidder 'a substantial advantage over other bidders and thereby restricts or stifles competition.'" *Id.* (quoting *Chris Berg, Inc.*, 680 P.2d. at 94).

In this case, the purpose of the bottom-dump specification in the RFP was to allow adequate clearance for dumping at UAF's facility. In denying Gunderson's protest, the chief procurement officer concluded that the proposal by Royal contained only a "minor variation on the theme established by the RFP—that is that coal may be delivered to the UAF Power Plant by means other than rail car." He based this conclusion on his finding that "the size and capacity of the grizzly located in the coal handling facility does not restrict end dumping as proposed by Royal. . . . For purposes of this RFP they have proposed a method of delivery and off loading that appears viable and they will be held to the requirements for performance."

■ We conclude that Gunderson has failed to show that Royal's proposed equipment was a material deviation from the RFP requirements. There was thus a reasonable basis for the University's action in accepting Royal's proposal under the RFP. Furthermore, there is no evidence in the record to

---

contract would go to another bidder. The University's RFP clearly stated in Section 7(a):

> Offerors must read the RFP thoroughly. Any ambiguity, conflict, discrepancy, omission or other errors in this RFP should be reported in writing to the University of Alaska address for inquiries shown on the face of the RFP prior to the Pre-proposal Conference and in any case must be reported prior to the proposal submittal deadline.

Therefore, UAF has a strong argument that Gunderson has waived his objections.

This argument finds support in the federal government contract bidding process. Protests against the language and specifications of an

Invitation for Bids (IFB) must be received by the Comptroller General (Comp.Gen.) prior to bid opening.

> The Comp. Gen. will not consider a protest against an alleged deficiency in the IFB if the protester goes along with the procurement without objection until it appears that the award may go to another bidder. If the bidder has not protested before then, he is deemed to have acquiesced in the terms of the IFB.

Paul A. Shnitzer, *Government Contract Bidding* 573 (2d ed.1982). Because we find that the RFP was not deficient, we need not decide whether Gunderson waived his objection by failing to object prior to the award of the contract.

suggest that such equipment gave Royal a substantial advantage over other bidders. In fact, the chief procurement officer's decision did not represent UAF's final action on this issue. Prior to awarding the contract to Royal, the University obtained confirmation that Royal was "not making any exceptions to the specifications, including scope of services, paragraph 2." The contract was then awarded to Royal "in strict accordance with the terms and conditions" of the RFP. Accordingly, Royal is using bottom-dump equipment in compliance with the RFP requirements, and any error by the chief procurement officer is harmless.

### 2. Reduction of Proposed Price

 After evaluating the proposals received, UAF sent a form letter to those offerors "within the competitive range for further consideration." This June 24, 1993 letter requested a confirmation of the price schedule from the original proposal and further informed these offerors that

[a]s soon as the evaluation is completed you will be advised of the results. In addition, you are notified that additional clarification or information and a best and final offer *may* be requested at a later date.

(Emphasis added.)

Upon receipt of this letter, Royal amended its proposal by further reducing the price on its price schedule, without awaiting a request by UAF for a best and final offer. Gunderson argues that the University did not provide any of the other offerors an opportunity to make a best and final offer at a later date. Gunderson also contends that Royal's price reduction violated University PR & P 3-081.[7]

---

7. P-3-081 states:

Unless otherwise provided in the request for proposals, any proposal, withdrawal, or modification received after the established due date at the place and closing time designated for receipt of proposals is late and may only be considered if its lateness is due solely to mishandling by the university.

8. In response to the University's request for clarification, Gunderson indicated that he was proposing to use his own new type of specially designed equipment; two other bidders adjusted their prices.

---

As UAF points out, changes in price after the proposal deadline are expressly permitted under the University's competitive sealed proposals procedure. P-3-061(a) provides:

The competitive sealed proposals method differs from competitive sealed bidding in two important ways. First, it permits discussions with competing offerors and changes in their proposals including price; and second, it allows comparative subjective evaluations to be made when determining acceptable proposals for negotiation and award of the contract.

The ability of offerors to make price adjustments is further recognized under P-3-061(b): "Under competitive sealed proposals, revisions in a proposal, including prices, may be made after proposals are opened." Furthermore, Royal's submission was not an untimely modification to the RFP but instead was a response to a letter requesting verification of its proposal.

There is no support for Gunderson's assertion that he was not given the same opportunity to adjust his price as was given to the other proposers.[8] The University representative at the pre-proposal conference informed all of the potential proposers that the University had the right to obtain clarifications and enter into negotiations with the proposers after the proposal deadline. Gunderson was further advised in a letter that the alternative procedure of requesting best and final offers was optional.

The chief procurement officer found that the University did not accept a "late modification" but had merely allowed a change in price expressly permitted by P-3-061(b). The chief procurement officer's decision did not constitute an abuse of discretion, and the decision has a reasonable basis in the law.[9]

---

9. In its decision the superior court addressed the issue of whether Gunderson had standing to protest the responsiveness of Royal's proposal. The court determined that Gunderson had a sufficient personal stake in the outcome to have standing to protest the responsiveness of Royal's proposal. In holding that Gunderson had standing, the superior court stated:

Acknowledging the Alaska Supreme Court's stated liberal construction of standing in administrative appeals, and the fact that the responsiveness issue is only part of Gunderson's argument, this court finds that Gunderson has

## IV. CONCLUSION

"The determination by a public agency of the responsiveness of a bid is within the agency's discretion, subject, on judicial review, to an ascertainment that there was a reasonable basis for the agency's action." *Chris Berg, Inc.*, 680 P.2d at 94. In this case, the chief procurement officer did not abuse his discretion in awarding the coal hauling contract to Royal. We hold that there is a reasonable basis for the award to Royal and AFFIRM the decision of the superior court upholding the award of the contract to Royal.

standing to challenge the responsiveness of Royal's proposal as it relates to the question of UAF's implied duty to fairly and honestly consider all of the proposals.

UAF renews its argument before this court that Gunderson lacks standing to protest the responsiveness of Royal's proposal. It argues that Gunderson does not have a sufficient personal stake in the outcome of the controversy since he did not present the second lowest price proposal. Although a judgment of the superior court may be affirmed on different grounds than those advanced by the trial court, we need not reach the issue of standing given our conclusion that the chief procurement officer did not abuse his discretion in the contract award.