**LAKLOEY, INC., Appellant,**

v.

**UNIVERSITY OF ALASKA, Appellee.**

**No. S–11624.**

Supreme Court of Alaska.

June 23, 2006.

William R. Satterberg, Jr., Fairbanks, for Appellant.

Christopher E. Zimmerman, McConahy Zimmerman & Wallace, Fairbanks, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

The University of Alaska Fairbanks issued an addendum to a bid solicitation on the day scheduled for opening bids and after Lakloey, Inc. had submitted its bid. Lakloey filed a bid protest that argued that irregularities in the bidding process entitled it to recover its bid preparation costs. The university eventually rejected all bids as exceeding project funds and then denied Lakloey's bid protest. When Lakloey appealed, the superior court rejected Lakloey's argument that it was denied due process, and affirmed the university's decision.

Because Lakloey has neither argued nor demonstrated that any bidding irregularities wasted costs already expended in bid prepa-

ration or caused it to incur additional costs, we affirm the denial of its claim for bid preparation costs.

## II. FACTS AND PROCEEDINGS

On March 5, 2003 the University of Alaska published a "Notice of Invitation for Bids" for improving an existing facility at the Yukon Flats Training Center Extension (YUTE) and for other miscellaneous work. Bids were to be opened at 2:00 p.m. on March 20. The Instructions to Bidders explained the procedure for submission and evaluation of bids. The instructions also specified that addenda to the bid solicitation would be issued no later than the day before the scheduled bid opening, and that additional time would be granted to submit bids if an addendum were issued within one week of the scheduled bid opening.[1]

Lakloey, Inc. submitted a bid before 2:00 p.m. on March 20. Also before 2:00 p.m. on March 20, but after Lakloey submitted its bid, the university issued Addendum #2. Addendum #2 changed several bid criteria and adjusted the amount of required builder's insurance from $1.5 million to the "Value of Completed Project." It also changed the date for the bid opening from March 20 to April 1.

On March 24 Lakloey sent the university a protest letter that alleged that Addendum #2 violated "the conditions of the solicitation, the procurement regulations of the University, [and] the procurement code of the State of Alaska." The protest also argued that Addendum #2 was "without merit" and speculated that the addendum might "represent the expression of a conflict of interest." Lakloey requested that only those parties who had submitted bids before the university issued Addendum #2 be allowed to submit bids for the project as modified by the ad-

dendum. Lakloey alternatively requested that the entire solicitation be cancelled and that Lakloey be awarded its bid preparation costs.

The university procurement officer rejected Lakloey's protest on March 28. Her rejection letter stated that Addendum #2 violated neither the applicable university regulations nor the state procurement code, and that the instructions' representation concerning the timing and content of addenda was not binding on the procurement officer.

By letter of March 31 Lakloey appealed the procurement officer's denial of its protest. Lakloey's appeal argued that Addendum #2 (1) violated the instructions to bidders; (2) violated AS 36.30.150(a) by introducing a "subjective and nebulous" insurance requirement; (3) violated AS 36.30.130(a)'s requirement that any determination that a shortened bidding period is advantageous be in writing; and (4) had theoretically reduced competition.

On April 1—the bid opening date set by Addendum #2—Lakloey submitted another bid. On April 10 the university notified Lakloey that the bids of Lakloey and its sole competitor (Nenana Lumber) exceeded project funds and were therefore rejected.

Because the university concluded that there were no contested issues of material fact, it decided Lakloey's protest appeal without a hearing. The university concluded that (1) Lakloey had received the relief it requested because only it and Nenana Lumber submitted bids by Addendum #2's deadline; (2) the appeal was moot because Lakloey was not the apparent low bidder and would not have been awarded the contract; (3) Lakloey was not an "interested party" under AS

---

1. The instructions stated that

   [t]he Owner may modify the Invitation for Bids no later than seven (7) calendar days prior to the date fixed for opening of bids by issuance of an addendum to all parties who have been furnished Invitation for Bids for bidding purposes. In determining the intervening calendar days between issuance of an addendum and bid opening: the day the addendum is issued is **NOT** counted; the day of the bid

   opening is **NOT** counted. *An addendum may be issued up to and through the day prior to the date fixed for opening of bids,* in which case the bid date shall be extended in that addendum to allow for the previously stated number of intervening days between issuance of an addendum and bid opening. Bidders must acknowledge *receipt of all addenda on the Bid Form.*

   (Bold lettering and capitalization in original; emphasis added.)

36.30.699;[2] (4) Lakloey could not raise new issues on appeal; (5) Lakloey's protest was vague and non-specific; and (6) the instructions were superseded by state law and university regulations.

Lakloey filed a superior court appeal from the denial of its bid protest. Lakloey also argued that the university violated Lakloey's due process rights by deciding its appeal without a hearing.

The superior court rejected each of Lakloey's arguments. It pointed out that under the instructions, Lakloey could have asked the university for clarification or interpretation of the allegedly ambiguous term "Value of Completed Project." The court, observing that the university rejected Lakloey's bid because it exceeded the amount budgeted for the project, could not find a connection between Addendum # 2 and the disparity. The court also noted the lack of causation between the university's non-compliance with AS 36.30.130 and any damages Lakloey might have suffered. It therefore affirmed the university's decision.

Lakloey appeals.

## III. DISCUSSION

### A. Standard of Review

■ When the superior court acts as an intermediate court of appeal, we review its decision de novo.[3] We use two standards of review when reviewing the statutory interpretation of administrative agencies. When statutory interpretation "involves agency expertise or the determination of fundamental policies within the agency's statutory function," we use the "rational basis" test.[4] But "when the statutory interpretation does not involve agency expertise, or the agency's specialized knowledge and experience would not be particularly probative," we substitute our own judgment.[5]

### B. Lakloey Is Not Entitled to Its Bid Preparation Costs.

Lakloey argues that AS 36.30.585 entitles it to recover its bid preparation costs. Subsection .585(a) provides that "[i]f the procurement officer sustains a protest in whole or in part, the procurement officer shall implement an appropriate remedy."[6] Subsection .585(c) limits a successful bid protester's damages "to reasonable bid or proposal preparation costs."

■ In *King v. Alaska State Housing Authority* we held that a bid solicitation is not an offer, but merely "a request for offers."[7] A bid solicitation does, however, create an obligation to consider all bids fairly and honestly.[8] We concluded that

in exchange for a bidder's investment of the time and resources involved in bid preparation, a government agency must be held to an implied promise to consider bids

---

**2.** AS 36.30.699 provides that

[i]n AS 36.30.560—36.30.695, "interested party" means an actual or prospective bidder or offeror whose economic interest may be affected substantially and directly by the issuance of a contract solicitation, the award of a contract, or the failure to award a contract; whether an actual or prospective bidder or offeror has an economic interest depends on the circumstances.

Citing AS 36.30.699, the university asserts in passing that Lakloey has never made any showing that its economic interest was in any way impacted by the issuance of Addendum # 2. We regard this assertion as a contention that Lakloey does not have standing. This cursory assertion does not preserve the issue. We therefore assume for purposes of this appeal that Lakloey has standing to raise the issues discussed in Part III of this opinion.

**3.** *Gunderson v. University of Alaska, Fairbanks,* 922 P.2d 229, 233 (Alaska 1996).

**4.** *Id.*

**5.** *Id.*

**6.** AS 36.30.585(b) provides that in determining what remedy is appropriate, the procurement officer should consider

the seriousness of the procurement deficiencies, the degree of prejudice to other interested parties or to the integrity of the procurement system, the good faith of the parties, the extent the procurement has been accomplished, costs to the agency and other impacts on the agency of a proposed remedy, and the urgency of the procurement to the welfare of the state.

**7.** *King v. Alaska State Hous. Auth.,* 633 P.2d 256, 261 (Alaska 1981).

**8.** *Id.*

honestly and fairly. Breach of this implied contract on the part of an agency entitles the bidder to recover the costs incurred in the preparation of the bid.[9]

The government therefore may not reject a bid in an arbitrary and capricious manner.[10]

We elaborated on the arbitrary and capricious standard in *Dick Fischer Development No. 2, Inc. v. State, Department of Administration,* in which we stated that

in evaluating the governmental action, the following factors should be considered: 1) subjective bad faith on the part of the officials, depriving the bidder of fair and honest consideration of the proposal; 2) proof that there was no reasonable basis for the administrative decision; 3) the amount of discretion entrusted to procurement officials; and 4) violation of a pertinent statute.[11]

Lakloey argues that the university acted in an arbitrary and capricious manner by violating several statutes and acting without a reasonable basis, entitling Lakloey to its bid preparation costs.

## 1. Alaska Statute 36.30.585 requires that Lakloey show actual damages caused by the alleged bid irregularities.

Lakloey argues that because AS 36.30.585 entitles Lakloey to its full bid preparation costs, it is not required to identify additional costs arising from alleged bid irregularities or to show that the alleged irregularities caused a waste of resources expended in bid preparation. Whether AS 36.30.585 requires Lakloey to show actual damages caused by the alleged bid irregularities is a question of law that does not involve agency expertise. We therefore decide the issue using our independent judgment.[12]

Alaska Statute 36.30.585(c) limits damages in successful bid protests to bid preparation costs. Alaska Statute

36.30.585(b)'s list of factors to be considered in determining an appropriate remedy indicates that recovery of full bid preparation costs is not the only appropriate remedy possible. Furthermore, we recognized in *Dick Fischer* that the "rationale for creating an implied promise not to reject bids arbitrarily" was to compensate bidders for "loss of time and resources involved in bid preparation."[13] A successful bid protester is therefore not automatically entitled to an award of its entire bid preparation costs upon a showing of bid irregularities, but must demonstrate a loss of time or resources, or identify additional costs incurred, because of the bid irregularities.

## 2. Lakloey has not demonstrated that the university's violation of AS 36.30.130 wasted any part of its bid preparation costs or caused it to incur additional expenses.

Alaska Statute 36.30.130(a) provides that

[t]he procurement officer shall give adequate public notice of the invitation to bid at least 21 days before the date for the opening of bids. If the procurement officer determines in writing that a shorter notice period is advantageous for a particular bid and adequate competition is anticipated, the 21–day period may be shortened.

Alaska Statute 36.30.130(b) states that "[i]f the state fails to substantially comply with the requirements of (a) of this section, the state is liable for damages caused by that failure."

The March 5 bid solicitation specified that bids were to be opened on March 20. This was at most fifteen days after the notice date, rather than the twenty-one days AS 36.30.130(a) requires. By failing to make a written determination that the shorter notice period was "advantageous" in this case, the

---

9. *Id.* at 263.

10. *Id.*

11. *Dick Fischer Dev. No. 2, Inc. v. State, Dep't of Admin.,* 838 P.2d 263, 266 (Alaska 1992) (citing *Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1203–04 (1974)).

12. *See Gunderson,* 922 P.2d at 233.

13. *Dick Fischer,* 838 P.2d at 266 n. 5 (citing *King,* 633 P.2d at 263).

university procurement officer violated AS 36.30.130(a). We assume for purposes of this case that the lack of a written determination justifying the shorter period amounts to a failure "to substantially comply" with AS 36.30.130(a).

■ If it could show that it incurred expenses attributable to the university's failure to substantially comply with AS 36.30.130(a), Lakloey would be entitled to recover those costs from the university. But Lakloey has not alleged, much less proved, that it suffered damages caused by the university procurement officer's failure to make a written determination justifying the bid solicitation's shortened notice period. Lakloey is therefore not entitled to bid preparation costs based on the lack of a written determination.

Nor has Lakloey demonstrated that the shorter notice period itself caused Lakloey to suffer any damages. Lakloey asserts that shorter bid preparation time generally increases bid preparation costs.[14] But because it neither argued nor established that the reduced bidding period actually increased its bid preparation costs, the shortened notice period itself does not entitle Lakloey to recover its bid preparation costs.

3. **Lakloey has not demonstrated that the university's untimely issuance of Addendum # 2 wasted part of its bid preparation costs or caused it to incur additional expense.**

■ The instructions to bidders stated that the procurement officer may issue addenda to the bid solicitation until the day before the scheduled bid opening.[15] The procurement officer issued Addendum # 2 on the day bids were originally scheduled to be opened. The university therefore issued Addendum # 2 and changed the bid solicitation's insurance requirement after passage of the deadline specified in the instructions. Lakloey argues that the university's untimely issuance of Addendum # 2 entitles Lakloey to its bid preparation costs.

The parties dispute whether the instructions impose legal obligations on the university. We assume for purposes of this decision that the university was bound to follow the procedures outlined in the instructions.

Lakloey argues that it reasonably relied on the instructions. In *King* we declined to reach the appellant's promissory estoppel argument because we concluded that the appellant had established a prima facie case that the state had breached the implied contract to consider bids fairly and honestly.[16] Restatement (Second) of Contracts § 90(1) states that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."[17]

But the instructions allowed the university to issue addenda until the day before the scheduled bid opening. If the university had issued Addendum # 2 a day earlier than it did, Lakloey would have had no legal basis for complaining about the addendum's timing. Lakloey therefore may be regarded as having relied on the instructions' representation that the university would issue no addenda the day of bid opening. But Lakloey has not asserted that it took action or for-

14. Lakloey argues that it was "disadvantaged by . . . the additional costs of preparing a bid on a shortened basis" when Addendum # 2 extended the bidding period from March 20 to April 1. But AS 36.30.130(a) applies to "invitation[s] to bid," not to addenda that extend bid opening dates. Furthermore, the record does not indicate that Lakloey made an offer of proof. Instead, Lakloey has repeatedly asserted that it was not required to show additional costs caused by Addendum # 2. We also note that Addendum # 2 extended the bidding period for twelve days, which is longer than required by the instructions. *See supra* note 1.

15. *See supra* note 1.

16. *King,* 633 P.2d at 261. We also expressed reservations in *King* about applying the promissory estoppel theory to enforce an implicit promise. *Id.* at 261 n. 6. These concerns are not present in this case because the university made an explicit representation in the instructions that no further addenda would be issued on the day scheduled for bid opening.

17. Restatement (Second) of Contracts § 90(1) (1981).

went taking action related to the insurance requirement during the period between March 19 and 2:00 p.m. March 20.[18]

Because Lakloey has not demonstrated that it reasonably relied to its detriment on the university's representations in the instructions about the timing of addenda, the untimely issuance of Addendum # 2 does not entitle it to any bid preparation costs.[19]

Nor can we say that the change in insurance coverage required by Addendum # 2 was arbitrary and capricious. The procurement officer appears to have had a reasonable basis for concluding that allowing bidders to agree to insure the value of the completed project would result in better insurance coverage and potentially more competitive bids than requiring contractors to purchase $1,500,000 in builder's risk insurance.

### 4. The insurance requirement in Addendum # 2 is "objectively measurable."

Alaska Statute 36.30.150(a) provides in relevant part that

> the procurement officer shall evaluate bids based on the requirements set out in the invitation to bid. . . . *The criteria that will affect the bid price and be considered in evaluation for award must be objectively measurable,* such as discounts, transportation costs, and total or life cycle costs. The invitation to bid must set out the evaluation criteria to be used. Criteria

may not be used in bid evaluation if they are not set out in the invitation to bid.

(Emphasis added.) The original bid solicitation required contractors to obtain $1,500,000 in builder's risk insurance. Addendum # 2 required bidders to insure the "Value of Completed Project." Lakloey argues that the value of the completed project is not "objectively measurable," but is dependent on the procurement officer's subjective interpretation. Lakloey argues that a prospective bidder would therefore risk either being deemed non-responsive if it guessed too low a value, or losing competitive advantage if it guessed too high. Lakloey also seems to argue that the allegedly subjective insurance requirement made fair and honest consideration of its bid impossible, entitling it to its bid preparation costs.

■ In interpreting statutes, we "have adopted a sliding scale approach," under which "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose ˙ or intent must be."[20] "Under Alaska law, words and phrases in statutes generally are to be construed according to their common and approved usage."[21] The word "objective" means "publicly or intersubjectively verifiable [especially] by scientific methods" and "expressing or involving the use of facts without distortion by personal feelings or prejudices."[22] The word "measurable" means "capable of being

---

**18.** Lakloey also argues that it relied to its detriment on the instructions by forgoing opportunities to bid on other projects. Because Lakloey raises this contention for the first time in its reply brief, we do not consider it. *See* Alaska R.App. P. 212(c)(3) (providing that reply brief "may raise no contentions not previously raised in either the appellant's or the appellee's briefs").

**19.** Lakloey also argues that Addendum # 2 cancelled the original bid solicitation in an arbitrary and capricious manner. Addendum # 2 modified the bid solicitation as contemplated by the instructions, *see supra* note 1, but did so in an untimely manner. Addendum # 2 did not cancel the original bid solicitation. Furthermore, because Lakloey was able to submit a bid for the solicitation as modified by Addendum # 2, its pre-Addendum # 2 non-insurance-related bid preparation costs were not wasted. *Cf. Dick Fischer,* 838 P.2d at 266 n. 5 (stating that "[t]he

rationale for creating an implied promise to not reject bids arbitrarily" is the "loss of time and resources involved in bid preparation").

**20.** *Government Employees Ins. Co. v. Graham-Gonzalez,* 107 P.3d 279, 284 (Alaska 2005).

**21.** *Human Res. Co. v. Alaska Comm'n on Post Secondary Educ., State of Alaska,* 946 P.2d 441, 444 (Alaska 1997); *see also* AS 01.10.040(a) ("Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage.").

**22.** WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 1556 (1966); *see also* BLACK's LAW DICTIONARY 1103 (2004) (defining "objective" as "[o]f, relating to, or based on externally verifiable phenomena, as opposed to an individual's perceptions, feelings, or intentions").

measured."[23]  The phrase "objectively measurable" is therefore commonly understood as describing something that can be measured with reference to externally verifiable facts. Lakloey has not referred us to any legislative history that would suggest another interpretation.

■  A requirement for insurance of the value of the completed project is not as precise as the $1,500,000 insurance requirement that it replaced.  But the definition of "objectively measurable" does not require that the insurance requirement be set at a specific dollar amount.  Instead, the range of values based on the objective characteristics of the existing facility and planned improvements satisfies the requirement of AS 36.30.150(a) that the bid criteria be "objectively measurable."

The YUTE project consisted of improving an existing structure.  Estimates of the expected added value of the improvements would yield a range of acceptable values. Because the range could be generated and evaluated by objective facts, the value of the completed project was objectively measurable.

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the superior court upholding the university's determination is AFFIRMED.

23.  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY   1399.