STATE of Alaska, DEPARTMENT OF ADMINISTRATION, and Jim Duncan, in his official capacity as (former) Commissioner thereof, Petitioner,

v.

BACHNER COMPANY, INC., and Bowers Investment Company, Respondents.

No. S–12187.

Supreme Court of Alaska.

Sept. 14, 2007.

---

---

Marjorie L. Vandor, Assistant Attorney General, and David W. Márquez, Attorney General, Juneau, for Petitioner.

John J. Burns, Borgeson & Burns, PC, Fairbanks, for Respondents.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

We are asked to determine whether a Department of Administration hearing officer erred when he selected the remedy for a defective procurement process. Several months after a procurement contract for a long term lease was awarded, the hearing officer concluded that three separate irregularities had occurred during the proposal evaluation process. After conducting an analysis under AS 36.30.585(b), the Alaska provision governing remedies for errors committed in the procurement process, the hearing officer awarded the aggrieved bidders their proposal preparation costs but declined to order rescoring of the proposals or cancellation of the lease. The commissioner adopted the hearing officer's decision as his own. The superior court reversed the commissioner, holding that the hearing officer had erred in weighing the factors set out in AS 36.30.585(b). Because the hearing officer's decision has a reasonable basis in law and fact, we affirm it. Moreover, because the hearing officer's analysis regarding the appropriate remedy was both thorough and thoughtful, we adopt that portion of the decision, which is set out in the Appendix.

## II. FACTS AND PROCEEDINGS

### A. Facts

The facts in this case are not disputed. In December 2001 the Department of Administration, Division of General Services (the department), circulated a request for proposals (RFP) soliciting bids for the lease of roughly 24,000 square feet of office and storage space in Fairbanks. The space was to be used by the Department of Transportation. The lease was for a term of twenty years, with ten additional two-year renewals exercisable by the department.

Among the companies submitting responsive proposals were Bachner Company, Inc., Bowers Investment Company, and McKinley Development. Bachner and Bowers both proposed to lease existing buildings, while McKinley offered to construct and lease a new building. A five-member special com-

mittee evaluated the proposals. In February 2002 the procurement officer issued a notice of intent to award the contract to McKinley, which had received the highest scores during the evaluation process.

### B. Proceedings

In early March 2002 Bachner and Bowers filed separate bid protests,[1] both of which focused on technical irregularities. The procurement officer denied both protests and declined to stay the award of the contract to McKinley. On March 26, 2002, the procurement officer awarded the contract to McKinley and requested that it begin preparing for the lease. Bachner and Bowers separately appealed the denials of their bid protests in April 2002 to the commissioner of the department.

Allegations surfaced in the companies' appeals that there had been improprieties in the scoring process by members of the proposal evaluation committee. Hearing Officer Andrew Hemenway heard testimony regarding these and other alleged improprieties in the evaluation process.

Hearing Officer Hemenway issued a twenty-page decision in October 2002, which the commissioner adopted as his own. Hearing Officer Hemenway found that misconduct during the procurement process had resulted in "serious deficienc[ies]." One member of the evaluation committee had artificially lowered his scores for Bachner "to counteract what he perceived as [another evaluator's] favoritism for that offeror." The committee "did not apply the present value formula in a manner consistent with a reasonably prudent offeror's understanding of the RFP" because it failed to factor in anticipated increases in the consumer price index.[2] Additionally,

there was "an appearance that factors not listed in the RFP were considered by several evaluators."

Hearing Officer Hemenway identified three possible remedies: (1) confirmation of the award to McKinley coupled with an award of proposal preparation costs to Bachner and Bowers; (2) remand for rescoring without the one evaluator's improperly adjusted scores; and (3) cancellation of the lease and issuance of a new RFP. He analyzed the facts of the case using the factors set out in AS 36.30.585(b)[3] to determine which remedy was most appropriate. He concluded that "[o]n balance, the appropriate remedy would appear to be an award of the full costs incurred in connection with [Bachner's and Bowers's] proposal preparation."

Bachner and Bowers appealed to the superior court in November 2002, arguing that the hearing officer erred by failing to order cancellation or rescoring in addition to awarding proposal preparation costs. The superior court agreed. It reasoned that case law "makes clear" that preserving the integrity of the procurement system "has priority" over other factors listed in AS 36.30.585(b). Because Hearing Officer Hemenway did not give priority to this factor in his analysis, the superior court reversed and remanded for reconsideration of what remedy was most appropriate. We granted the department's petition for review of the superior court's decision.

### III. STANDARD OF REVIEW

When the superior court acts as an intermediate court of appeal from an administrative decision, we directly review the agency decision.[4] When an administrative

---

1. The other companies that submitted proposals did not file bid protests and are not parties to this case.

2. The stated price of each bid proposal was adjusted by applying a specified formula in order to reduce each bidder's total price to a present value figure.

3. AS 36.30.585(b) provides:
   In determining an appropriate remedy, the procurement officer shall consider the circumstances surrounding the solicitation or procurement including the seriousness of the pro-

curement deficiencies, the degree of prejudice to other interested parties or to the integrity of the procurement system, the good faith of the parties, the extent the procurement has been accomplished, costs to the agency and other impacts on the agency of a proposed remedy, and the urgency of the procurement to the welfare of the state.

4. *Gunderson v. Univ. of Alaska, Fairbanks*, 922 P.2d 229, 233 (Alaska 1996).

agency's interpretation of a statute "involves agency expertise or the determination of fundamental policies within the agency's statutory function" we apply the rational basis standard of review.[5] Under this standard, we will "determine whether the agency's decision is supported by the facts and has a reasonable basis in law, even if we may not agree with the agency's ultimate determination." [6]

## IV. DISCUSSION

Because the parties agree that three separate irregularities occurred in this case, the sole issue we must decide is whether the hearing officer chose an appropriate remedy. The department argues that the hearing officer properly applied AS 36.30.585(b) and acted within his discretion when he decided to confirm the lease and award the companies their proposal preparation costs. Bachner and Bowers disagree, arguing that the hearing officer erred by failing to give priority to a specific statutory factor.

Deciding what remedy is appropriate is a difficult endeavor where, as here, a defect in the bidding process is discovered after the innocent winning bidder has begun preparation for or performance of a contract. Under such circumstances equity can be done to disappointed bidders "only at the expense of inequity" to the winning bidder.[7] Hearing Officer Hemenway's decision undertook a thorough analysis of what remedy was appropriate in this case. He carefully analyzed the facts using the various factors listed in AS 36.30.585(b) and evaluated the benefits and drawbacks of each of the remedies available. Because Hearing Officer Hemenway's analysis was both legally sound and factually supported, we affirm the remedy he selected. Because of the thoroughness of his analysis of what remedy was appropriate in this case,

we take the further step of adopting that portion of his decision. The relevant portion of his analysis is included in the Appendix, but we first address two issues raised by Bachner and Bowers in their briefing.

### A. The Hearing Officer Correctly Applied AS 36.30.585(b).

■ Bachner and Bowers argue that Hearing Officer Hemenway misapplied AS 36.30.585(b) when he did not give extra weight to the factor that addresses harm to the integrity of the procurement system. They are incorrect.

Alaska Statute 36.30.585(b) grants the hearing officer a substantial amount of discretion to determine how to remedy a documented impropriety in the procurement process. Where a protest is sustained, the procurement official is instructed to "implement an appropriate remedy" after considering the six specified factors.[8] The statute itself does not require that any one factor be given greater weight than others and, contrary to Bachner and Bowers's assertions, case law does not hold otherwise. Previous procurement cases stress the need to ensure an even playing field for all bidders during the bidding process,[9] but this emphasis does not require that any factor in AS 36.30.585(b) be given more weight than others when determining an appropriate remedy. By carefully considering each statutory factor without giving determinative weight to any single one, Hearing Officer Hemenway correctly applied AS 36.30.585(b).

### B. The Hearing Officer Did Not Err in Concluding that the Department Would Incur Substantial Costs if the Lease Were Cancelled.

■ Bachner and Bowers also argue that the record does not support the hearing offi-

---

5. *Id.* (quoting *Pub. Employees' Local 71 v. State,* 775 P.2d 1062, 1063 (Alaska 1989)).

6. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987).

7. *Delta Data Sys. Corp. v. Webster,* 744 F.2d 197, 206 n. 5 (D.C.Cir.1984).

8. AS 36.30.585(a)-(b), set out in full, *supra* n. 3.

9. *See Dick Fischer Dev. No. 2, Inc. v. Dep't of Admin.,* 838 P.2d 263, 267 (Alaska 1992) (ex parte communication between former commissioner and one-time agent of winning bidder created appearance of impropriety sufficient "to support the State's decision to cancel the project"); *McBirney & Assocs. v. State,* 753 P.2d 1132, 1138 (Alaska 1988) (suggestions made by one bidder "outside the purview of other bidders and the public" constituted impropriety that warranted cancellation of procurement contract).

cer's conclusion that cancellation of the disputed lease would result in significant costs to the department. We cannot agree.

Under the principles set forth in the Restatement (Second) of Contracts (1981), if the department were to cancel the lease it would be liable to McKinley for at least the costs McKinley incurred preparing for the lease.[10] The department specifically requested that McKinley "proceed in preparation of the lease" in March 2002, and the record shows that McKinley began construction of the roughly 24,000 square foot building in May 2002. McKinley necessarily incurred substantial costs when it commenced construction of such a large building, Hearing Officer Hemenway's conclusion regarding the financial impact of cancellation on the department was not in error.

## V. CONCLUSION

For these reasons and those discussed in Hearing Officer Hemenway's attached decision, we AFFIRM the commissioner's decision to remedy the defective procurement by confirming the contract to McKinley and awarding full proposal preparation costs to Bachner and Bowers. To the extent that the superior court's decision conflicts with the hearing officer's decision, it is REVERSED.

## APPENDIX[11]

### BEFORE THE ALASKA DEPARTMENT OF ADMINISTRATION

In the Matter of:

BACHNER COMPANY, INC. and

BOWERS INVESTMENT CO.

Appellants

DGS RFP No.2002–2500–2984

Dept. of Admin. Case Nos. 02.06/.07

**RECOMMENDED DECISION**

These consolidated protest appeals concern a Request for Proposal (RFP) for a real estate lease, issued by the [Division] of General Services (DGS).

. . . .

### E. *Remedy*

The potential remedies in this case appear to be: (1) confirm the lease award to McKinley and award Bachner and Bowers their proposal preparation costs; (2) remand to DGS for rescoring, applying a reasonable Consumer Price Index (CPI) adjustment and omitting Mr. Weed's scores, and award the lease to the highest rated offeror; or (3) cancel the solicitation and issue a new RFP.

Alaska Statute 36.30.585(b) provides that in determining an appropriate remedy, the procurement officer must consider: (1) the seriousness of the procurement deficiencies; (2) the degree of prejudice to other interested parties or to the integrity of the procurement system; (3) the good faith of the parties; (4) the extent to which the procurement has been accomplished; (5) costs to the agency and other impacts on the agency of a proposed remedy; and (6) the urgency of the procurement to the welfare of the state.

(1) Seriousness of the procurement deficiency.

In this case, an evaluator improperly adjusted scores. This is a serious deficiency in the procurement process. Nonetheless, it is not a deficiency requiring cancellation, because the impropriety was limited to one evaluator. Typically, the remedy for such misconduct is to rescore the proposals omitting the scores by the evaluator whose conduct was improper.

In addition, the price evaluation did not comply with a reasonable reading of the RFP. This, too, is a serious procurement

---

**10.** Restatement (Second) of Contracts § 349 (1981) provides in relevant part: "[T]he injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance...."

**11.** As reprinted in this Appendix, the hearing officer's decision has been redacted to delete extraneous discussion. The original labeling of the hearing officer's section headings has been retained, but footnotes and pages have been renumbered. We have edited the decision to conform to our technical rules.

deficiency. The standard remedy for such a deficiency is to rescore the proposals applying the correct interpretation of the RFP.

This factor supports rescoring rather than cancellation. However DGS should have the option of cancellation (because it did not intend to utilize a CPI adjustment) if rescoring is deemed appropriate in light of all the circumstances.

### (2) Degree of prejudice to McKinley and integrity of the procurement system.

Either rescoring or cancellation would result in substantial prejudice to McKinley. Rescoring, under any reasonable CPI adjustment, would result in award to another offeror, and cancellation could also result in award to another. McKinley has incurred substantial construction costs, and award to another party would leave McKinley liable for those costs and would result in the loss of the profits anticipated under the lease. McKinley is not responsible for the deficiencies in the solicitation and is not responsible for the delay in the final administrative decision on the protests.

Bachner argues that McKinley is not substantially prejudiced because it can recover any damages incurred as a result of rescoring or cancellation of the solicitation by legal action against the State of Alaska. However, that McKinley may have a legal remedy does not mean that those outcomes are without prejudice to it. It is unlikely that any damages recovered by McKinley would entirely compensate it for its losses: the State may have defenses to any legal claims asserted;[12] damages would not include all costs incurred in pursing a remedy, may not include the indirect impacts of cancellation, and would in any event come only after a significant delay. While the prejudice to McKinley may be reduced by the availability of a legal remedy, it is not eliminated. From the standpoint of prejudice to McKinley, confirmation of the award is preferable.

With respect to the integrity of the procurement process, however, cancellation is the preferred remedy. Impropriety on the part of one evaluator is not necessarily in itself ground for cancellation. However, in this case there were apparent defects in the procurement entirely apart from the actual impropriety on the part of one evaluator. These apparent defects included: (1) patent ambiguity with respect to use of the present value analysis; (2) latent ambiguity with respect to CPI adjustments; and (3) the appearance that inappropriate factors were considered by the evaluators (proximity to existing DOT facility and past performance of offerors). Given the nature of the actual and apparent defects, cancellation would be appropriate.

Taken together, in light of the substantial risk of prejudice to McKinley, and the harm to the integrity of the procurement process, cancellation should be avoided if another suitable remedy is available.

### (3) Good faith.

Impropriety on the part of one evaluator is not equivalent to bad faith on the part of DGS. Nonetheless, it is sufficient to establish a breach of the implied contract of fair and honest consideration. Clearly, an award of the costs of proposal preparation is appropriate, but this factor does not support cancellation.

### (4) The extent the procurement has been accomplished.

Because procurement was not stayed, the procurement was completed before the protest appeal was filed. No lease has been executed as yet, but McKinley has commenced performance in conformity with its proposal by substantially completing construction of the new building that DGS expressed an intent to lease.

Because the procurement has been completed and substantial performance has begun, this factor supports confirmation of the

---

**12.** If the solicitation is cancelled before the lease is executed, McKinley arguably is not entitled to any award for lost profits. There is caselaw supporting the conclusion that any acceptance by the State prior to final resolution of a protest is conditional and subject to a condition subsequent. *See State v. Johnson,* 779 P.2d 778, 782 (Alaska 1989); *Dick Fischer Dev. No. 2, Inc. v. Dep't of Admin.,* 778 P.2d 1153, 1155 (Alaska 1989).

notice of award rather than rescoring or cancellation.

(5) Costs to the agency and other agency impacts of the proposed remedy.

The potential costs to the agency in the event the solicitation is cancelled or rescored are significant. It is only reasonable to anticipate that if the solicitation is cancelled, the State will be liable for the costs of construction. In addition, there is a substantial risk that the State would be liable for additional damages, such as lost profits. On the other hand, if the award to McKinley is sustained, the State would likely not be liable to either Bachner or Bowers for any damages beyond the limits of AS 36.30.585.

Bachner argues that the costs to the State are likely to be equaled or exceeded by cost savings resulting from an award to a lower cost offeror. However, even if the out-of-pocket costs over time are the same, the State would incur a substantial negative impact because the lower cost facility was, according to all evaluators, also a less desirable facility. The effect is that the State would pay a higher cost (Bachner or Bowers' bid price plus damages to McKinley) for a lower rated facility. For this reason, this factor weighs in favor of confirmation of the existing award rather than cancellation or rescoring.

(6) Urgency of the procurement.

There does not appear to be any urgency in acquiring the space at issue, since the existing landlord has indicated a willingness to extend the lease indefinitely. This factor supports cancellation and resolicitation.

(7) Other Factors.

. . . .

Another circumstance that should be considered in fashioning a remedy is the substantial costs incurred by Bachner and Bowers in pursing their administrative remedy. The failure to provide full and fair compensation to protestors for out-of-pocket costs incurred in a solicitation in which there is actual impropriety could have adverse impacts on the procurement process generally by insulating procurement decisions from administrative review and creating the perception that the procurement process is unfair.

### Conclusion

In light of the serious deficiencies in this procurement, cancellation and resolicitation are the appropriate remedies unless other factors outweigh that factor. In this case, the potential costs and other impacts on the State are substantial, and McKinley would be substantially and unfairly prejudiced by cancellation or rescoring. On balance, the appropriate remedy would appear to be an award of the full costs incurred in connection with proposal preparation. Accordingly, I recommend that the protest appeal be sustained, that the notice of intent to award to McKinley be confirmed, and that DGS be directed to compensate Bachner in the amount of $50,000, and Bowers in the amount of $30,000 for proposal preparation costs.
/s/
Andrew M. Hemenway
Hearing Officer