*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BACHNER COMPANY, INC. and BOWERS INVESTMENT COMPANY, | ) ) ) | |
| | ) | Supreme Court No. S-14629 |
| Appellants, | ) ) | |
| | ) | Superior Court No. 4FA-04-266 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JAMES WEED, JURANDA FAITH MADSON a/k/a JAN MADSON, BRUCE SENKOW, AND JOHN BENNETT, | ) ) ) ) | No. 6848 – December 6, 2013 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael McConahy, Judge.

Appearances: Michael C. Kramer, Kramer and Associates, Fairbanks, for the Appellants. Janell M. Hafner, Assistant Attorney General, and Michael C. Geraghty, Attorney General, Juneau, for the Appellees.

Before: Fabe, Chief Justice, Stowers, Maassen, and Bolger, Justices. [Winfree, Justice, not participating.]

BOLGER, Justice.

## I.    INTRODUCTION

Unsuccessful bidders on a public contract proposal filed a claim for intentional interference with prospective economic opportunity against four individual

procurement committee members. The superior court found that the bidders failed to present a genuine issue of material fact regarding the committee members' alleged bad faith conduct. The superior court then held that the committee members were protected by qualified immunity and that the lawsuit was barred by the exclusive remedy statute. The court deemed the committee members prevailing parties and awarded attorney's fees to the State. The bidders appeal.

We affirm. The bidders failed to present a genuine issue of material fact regarding the committee members' alleged bad faith. In addition, the exclusive remedy statute bars the bidders' suit. The superior court did not abuse its discretion in awarding attorney's fees to the State.

## II. FACTS AND PROCEEDINGS

### A. Facts

Bachner Company and Bowers Investment Company (together, Bachner) were unsuccessful bidders on a state contract ultimately awarded to McKinley Development for an Alaska Department of Transportation office building in Fairbanks.[1] The bids were scored by a procurement evaluation committee based on three criteria: (1) function, planning, and design (20 points); (2) appearance and indoor environment (ten points); and (3) public convenience (ten points). Thus the committee could award a total of 40 points. The appellees in this case — Jan Madson, James Weed, John Bennett, and Bruce Senkow — were members of this committee.

The committee used a three-pass scoring system. In each pass, committee members scored the proposals and then discussed the reasoning behind their scores. In subsequent passes, committee members adjusted their scores based on the discussions from the previous passes. After the second pass, the committee also visited each proposed site.

---

[1] *See Weed v. Bachner Co.*, 230 P.3d 697, 698 (Alaska 2010).

Separate from the committee scoring process, a procurement officer awarded ten additional points to bidders who qualified for the Alaska Offeror's/Bidder's Preference and up to 50 additional points for the proposal's price score. The committee had no control over the Alaska preference or the price scores. The committee's scores and the procurement officer's scores were then added together, and because McKinley had the highest score, it was awarded the lease.

## B.    Proceedings

In 2002, Bachner filed bid protests alleging irregularities in the bid scoring process.[2]  Madson, the committee chairman, denied the protests and refused to stay the award.  Bachner appealed.  On appeal, a hearing officer found "grave deficiencies" in four of the five evaluations by procurement committee members and awarded Bachner its bid preparation costs.[3]   Ultimately, we affirmed the hearing officer's recommendation.[4]

In 2004, Bachner filed a separate suit against four procurement committee members as individuals.[5]   Bachner's complaint asserted a claim for intentional interference with prospective economic opportunity, alleging that the procurement committee members failed to follow the required procedure for scoring bids.[6]  Bachner also asserted a due process claim against state officers, alleging deprivation of the right to contract under 28 U.S.C. § 1983.  The complaint alleged that:  (1) Senkow and Bennett

---

[2]    *Id.*;  *State, Dep't of Admin. v. Bachner Co.*, 167 P.3d 58, 60 (Alaska 2007).

[3]    *Weed*, 230 P.3d at 698.

[4]    *Bachner Co.*, 167 P.3d at 62.

[5]    *Weed*, 230 P.3d at 699.

[6]    *Id.*

acted in bad faith by considering the site location even though it was not a permissible evaluation criterion; (2) Senkow and Bennett acted in bad faith by refusing to adjust their scores when Madson advised them that they could not consider the site location; (3) Weed acted in bad faith by lowering his score of Bachner's bid because he thought other committee members were biased in favor of Bachner; and (4) Madson acted in bad faith by refusing to stay the contract award during Bachner's bid protest.

The committee members moved to dismiss, arguing that: (1) Bachner's claims were barred by the exclusive remedy provisions of AS 36.30.690; (2) the committee members were entitled to absolute immunity; and (3) Bachner failed to state a § 1983 claim.

The superior court dismissed Bachner's § 1983 claim for failure to state a claim, but the superior court refused to dismiss Bachner's state-law claim because it found that Bachner's allegations of bad faith, if proven, would fall outside the scope of qualified immunity.[7] We granted the committee members' petition for discretionary review and affirmed the superior court's holding that the committee members were entitled to qualified immunity but not absolute immunity.[8]

On remand, the committee members reasserted their argument that Bachner's state-law claim was barred by the exclusive remedy statute, but the superior court denied the motion, finding that the scope of the statute was co-extensive with qualified immunity. After discovery, the committee members moved for summary judgment, reasserting their exclusive remedy argument and arguing that they were protected by qualified immunity because Bachner failed to offer admissible evidence that could support an inference of bad faith. Bachner opposed and cross-moved for summary

---

[7] *Id.*

[8] *Id.* at 698-704.

judgment, arguing that the committee members' conduct demonstrated bad faith as a matter of law.

In December 2011, the superior court denied both of Bachner's motions and granted the committee members' motion for summary judgment based on qualified immunity and the exclusive remedy statute. The court reasoned that Bachner presented no genuine issue of material fact and that, as a matter of law, the committee members' conduct could not be considered bad faith. Thus, the court held that qualified immunity barred the suit.

The court also concluded that the exclusive remedy statute barred the suit, but the court did not address whether the exclusive remedy provision extends to bad faith conduct. Bachner moved for reconsideration and moved to supplement the record with an affidavit, but the court denied both motions. The court found the committee members were the prevailing parties and awarded the State $93,871.85 in fees and costs. Bachner appeals.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo, "reading the record in the light most favorable to the non-moving party and making all reasonable inferences in its favor."[9] "Summary judgment is only appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law."[10] "The party opposing summary judgment must set forth specific facts showing genuine issues

---

[9] *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003) (citing *Spindle v. Sisters of Providence in Wash.*, 61 P.3d 431, 436 (Alaska 2002)); *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 785 (Alaska 2005) (citing *City of Kodiak v. Samaniego*, 83 P.3d 1077, 1082 (Alaska 2004); *Powell v. Tanner*, 59 P.3d 246, 248 (Alaska 2002)).

[10] *Alaska Civil Liberties Union*, 122 P.3d at 785 (citing *Odsather v. Richardson*, 96 P.3d 521, 523 n.2 (Alaska 2004)).

and cannot rest on mere allegations; moreover, such facts must arise from admissible evidence."[11] "To determine whether the nonmoving party can produce admissible evidence creating a genuine factual dispute, we will consider the affidavits, depositions, admissions, answers to interrogatories and similar material."[12]

The proper interpretation of a statute presents a question of law that we review de novo, "adopting the rule of law most persuasive in light of precedent, reason, and policy."[13]

"A trial court's award of attorney's fees is generally reviewed for abuse of discretion."[14] "An abuse of discretion exists if an award is 'arbitrary, capricious, manifestly unreasonable, or the result of an improper motive.' "[15] The trial court's application of law in awarding attorney's fees is reviewed de novo.[16]

## IV. DISCUSSION

### A. The Superior Court Was Not Bound By Findings From Previous Administrative Proceedings.

---

[11] *Witt*, 75 P.3d at 1033 (quoting *Braun v. Alaska Commercial Fishing & Agric. Bank*, 816 P.2d 140, 144 (Alaska 1991); *Brady v. State*, 965 P.2d 1, 8 (Alaska 1998) (internal quotation marks omitted)).

[12] *Schug v. Moore,* 233 P.3d 1114, 1116 (Alaska 2010) (quoting *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 59 (Alaska 2002)).

[13] *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1118 (Alaska 2009).

[14] *Krone v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 250, 252 (Alaska 2009) (citing *Kellis v. Crites*, 20 P.3d 1112, 1113 (Alaska 2001)).

[15] *Id.* (quoting *Reid v. Williams*, 964 P.2d 453, 460 n.17 (Alaska 1998)).

[16] *Id.* (citing *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001)).

The superior court, citing *State, Department of Health & Social Services v. Doherty*,[17] held that the findings from Bachner's previous administrative appeal could not be used against the committee members to create a genuine issue of material fact. On appeal, Bachner asserts that collateral estoppel should bar the committee members from challenging findings from the administrative appeal because the committee members are in privity with the State of Alaska and their legal claims are identical. The committee members respond that they are not in privity with the State.

> Collateral estoppel prohibits a party from relitigating an issue of fact if:

> (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.[18]

In *Doherty*, the element of privity was also the basis for denying collateral estoppel. *Doherty* involved a § 1983 claim against an Office of Children's Services social worker.[19] The appellants argued that the official was in privity with OCS because: (1) the official's conduct was the central issue in the prior case; (2) the official had notice and an opportunity to be heard on the issues; (3) the official attended the trial and testified; (4) many of the prior case's factual findings were based upon evidence presented by the official; and (5) the official controlled the presentation of evidence.[20]

---

[17]     167 P.3d 64 (Alaska 2007).

[18]     *Id.* at 71 (quoting *Powers v. United Serv. Auto. Ass'n*, 6 P.3d 294, 297 (Alaska 2000)).

[19]     *Id.* at 66-68.

[20]     *Id.* at 72.

However, in *Doherty* we recognized that, generally "employees acting in their personal capacities are not in privity with the government and are not bound by adverse determinations against the government."[21] We explained:

> [A] non-party will be found to have been in privity with a party to a prior legal proceeding only if that non-party "(1) substantially participated in the control of a party's presentation in the adjudication or had an opportunity to do so; (2) agreed to be bound by the adjudication between the parties; or (3) was represented by a party in a capacity such as trustee, agent, or executor."[22]

We concluded that the fact that the social worker testified and presented evidence did not mean that the social worker "had control over the litigation or the ability to pursue her personal interests."[23] And the social worker "did not agree to be bound by the adjudication and was not represented by a party in a capacity such as trustee."[24] Thus, the social worker was "not afforded a full and fair opportunity to litigate the issues of fact."[25]

Here, Bachner argues that the committee members are in privity with the State because: (1) the bid protests focused on the committee members' allegedly illegal actions; (2) the committee members had notice, an opportunity to be heard, and procedures protecting their interests in the administrative proceeding; (3) the Attorney General adequately represented their interests; (4) Madson defended the committee

---

[21]    *Id.* at 73.

[22]    *Id.* (quoting *Powers*, 6 P.3d at 298).

[23]    *Id.*

[24]    *Id.*

[25]    *Id.*

members' actions during the hearing; and (5) Weed was advised to seek independent legal counsel.

Bachner's arguments are very similar to the arguments in *Doherty*.[26] Bachner attempts to distinguish *Doherty* on grounds that Weed was advised to seek independent counsel. But this distinction does not present a sufficient reason to deviate from the principle that committee members acting in their personal capacities are not in privity with the government. In this case, the committee members were not parties to the bid protest proceeding; they did not control the litigation; they did not agree to be bound by its outcome; and they were not represented by counsel. We conclude that the committee members were not in privity with the State for the purpose of collateral estoppel, and that the superior court was therefore not bound by findings from the administrative proceeding.

## B.     The Committee Members Are Protected By Qualified Immunity.

The procurement process requires procurement officers to exercise independent judgment and avoid conflicts of interest. Procurement officers are encouraged to utilize their knowledge and experience and to discuss bids with each other during the process. We have held that qualified immunity protects procurement officials in the exercise of these duties.[27]

"Under a rule of qualified immunity, a public official is shielded from liability . . . when discretionary acts within the scope of the official's authority are done in good faith and are not malicious or corrupt."[28]  Thus, " 'malice, bad faith or corrupt

---

[26]     *See id.* at 72.

[27]     *See Weed v. Bachner Co.*, 230 P.3d 697, 703-04 (Alaska 2010).

[28]     *Id.* at 700 (quoting *Aspen Exploration Corp. v. Sheffield*, 739 P.2d 150, 158 (Alaska 1987)).

motive transforms an otherwise immune act into one from which liability may ensue.' "[29] Qualified immunity " 'protect[s] the honest officer who tries to do his duty,' " but it does not protect "malicious, corrupt, and otherwise outrageous conduct."[30] When committee members raise qualified immunity as a defense and testify that they acted in good faith, the committee members are entitled to judgment as a matter of law unless the plaintiffs can present some admissible evidence that creates an issue of fact as to whether the committee members acted in bad faith or with an evil motive.[31]

For example, in *Smith v. Stafford*, we held that the plaintiff's affidavit "contain[ed] assertions indicating that a genuine issue of material fact exists concerning [the defendant's] state of mind with regard to the [plaintiff's claims]."[32] The plaintiff stated that the social worker defendant falsified evidence and threatened the plaintiff.[33] We held that "[t]he statements in the affidavit, if true, indicate that [the social worker] may have been acting in bad faith."[34]

Similarly, in *J & S Services, Inc. v. Tomter*, the plaintiff alleged that a procurement official, "motivated by animosity against [the plaintiff] and a desire for personal financial gain, abused his position as a participant in the procurement process

---

[29]     *Id.* (quoting *Aspen Exploration*, 739 P.2d at 158).

[30]     *Id.*

[31]     *Smith v. Stafford*, 189 P.3d 1065, 1074 (Alaska 2008) (citations omitted); *see Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1100 (Alaska 1989).

[32]     189 P.3d at 1074.

[33]     *Id.*

[34]     *Id.* at 1075.

to prevent [the plaintiff] from forming a contract with the state."[35]  We held that the plaintiff had stated a cause of action sufficient to defeat a motion to dismiss.[36]

Bachner's claim for intentional interference with prospective economic opportunity alleged that the committee members acted in bad faith.  In response, the committee members claimed qualified immunity and submitted affidavits stating that they acted in good faith.  The superior court viewed Bachner's evidence in the light most favorable to Bachner and drew all reasonable inferences in Bachner's favor.  The court found that Bachner failed to present a genuine issue of material fact and that, as a matter of law, the committee members' conduct could not be considered bad faith.

We address each of Bachner's arguments in turn.

### 1.     The proximity issue

The Request for Proposals (RFP) and the RFP Evaluator's Guide for this project required the committee to evaluate, among other things, public convenience, including "location with other state agencies."  Before the superior court, Bachner argued that Bennett and Senkow considered proximity to other state agencies in bad faith because they are both "long time DOT employees who wanted a new facility as close to the DOT headquarters . . . as possible."  Bachner argued that Madson told Bennett and Senkow that proximity to existing facilities was an impermissible criterion, but Bennett and Senkow ignored her and "recruited Weed into their conspiracy" to award the contract to McKinley.  Bachner also claimed that Madson told the bidders at a pre-bid conference that proximity to the DOT site would not be considered.

---

[35]     139 P.3d 544, 551 (Alaska 2006) (citing *Kelley Prop. Dev., Inc. v. Town of Lebanon*, 627 A.2d 909, 910, 923 n.30 (Conn. 1993); *Conway Corp. v. Constr. Eng'rs, Inc.*, 782 S.W.2d 36, 40-41 (Ark. 1989)).

[36]     *Id.*

The superior court noted that "location with other state agencies" was a published criterion in the RFP guide and observed that all parties agreed that adherence to the written criteria in the RFP guide was important. The superior court concluded, "Without some evidence suggesting the actions of the [committee] members were in fact wrongful on some level, the court cannot find bad faith."

On appeal, Bachner makes the same arguments. Bachner quotes the affidavit of Tom Roberts, a realtor who attended the pre-bid conference. Roberts stated that Madson told the bidders that proximity to DOT would not be considered and that it was not a published criterion.

Bachner does not appear to argue that any oral statements at the prebid conference actually modified the written terms of the RFP.[37] As noted above, the RFP lists "location with other state agencies" as part of the "public convenience" factor. DOT is a state agency, and the committee members properly considered proximity to the DOT facility in the scoring process. We affirm the superior court's holding that consideration of a written RFP criterion generally cannot support an inference of bad faith.

### 2. The public transportation issue

The RFP required all proposed buildings to have regularly scheduled bus service and a bus stop within 720 feet of a building entrance. A bid from Fountainhead Development was declared non-responsive because it included no plans to secure bus service. The McKinley proposal included a compliant bus stop, but the McKinley bus stop did not have bus service at the time of the proposal.

During a committee meeting, Madson (in the presence of Bennett and Senkow and another committee member) called the Fairbanks Bus Authority and spoke

---

[37] *Cf. Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 504-05 (Alaska 1995) (oral representations at a prebid conference did not alter the written terms of a construction contract).

with acting Transportation Director Glenn Miller to determine whether bus service was available at the McKinley building. Miller apparently said that bus service could be provided if certain conditions were met. After that conversation, Madson advised Chief Procurement Officer Vern Jones that service was available and asked Jones if the McKinley proposal complied with the public transportation requirement. Jones confirmed that the McKinley proposal met the public transportation requirement. Madson subsequently received a letter from Transportation Director Max Lyon, stating that Fairbanks Bus Authority would make a regularly scheduled stop near the McKinley building if McKinley received the contract.

Before the superior court, Bachner claimed that the committee members wrongfully determined that the McKinley proposal met the public transportation requirement. Bachner argued that Miller's affidavit established that he told the committee that bus service "could" be provided if certain conditions were met, whereas Madson told Jones that bus service "would" be provided. In response, the committee members argued that: (1) the McKinley proposal included a bus stop; (2) the Committee called Miller, who told the Committee that service could be provided; (3) Jones advised Madson that the McKinley proposal met the public transportation requirement; and (4) the committee members swore that they acted in good faith.

The superior court concluded that, at best, Bachner's evidence established that the committee members incorrectly or imprecisely reported Miller's statements to Jones and incorrectly concluded that McKinley's proposal met the public transportation requirement. The superior court quoted *Prentzel v. State, Department of Public Safety*, where we said:

> [B]efore malice can become a disputed question of fact, the
> record must contain at least some objective evidence

establishing facts capable of supporting an inference of malice.[38]

Citing *Prentzel* and *Pauley v. Anchorage School District*,[39] the superior court explained that an incorrect or inappropriate action does not raise an inference of malice or bad faith. The court noted that these committee members took steps to do their jobs correctly, applied identical criteria to the Fountainhead Development bid, and took notes in an attempt to document their efforts.

On appeal, Bachner again points to Miller's affidavit and argues that the committee members acted in bad faith when determining that the McKinley proposal complied with the bus service requirement. The committee members respond that, at best, Miller's affidavit establishes that "Madson imprecisely reported the details of her conversation to Vern Jones, misunderstood the nature of the city's bus service assurances, and/or negligently failed to ensure that the McKinley proposal met the public transportation requirement of the RFP," but it does not establish that Madson acted with an evil or a corrupt motive.

The committee members assert that Madson reasonably relied on the McKinley site plan proposal which showed a bus stop near the entrance to the McKinley building and a letter from Transportation Director Max Lyon to McKinley, which states:

> Due to the number of residents that bus stop would benefit, we *would* make a regular scheduled stop near your office complex. If you are successful in securing a lease with the Department of Transportation for your new building, we *would* place a bus stop near the entrance of the Department of Transportation and Public Facilities headquarters at 2301 Peger Road. This should meet your contractual requirements with the State and would be implemented by the occupancy date of your contract.

---

[38]    169 P.3d 573, 585 (Alaska 2007).

[39]    31 P.3d 1284, 1286 (Alaska 2001).

(Emphasis added.)  Further, Chief Procurement Officer Jones confirmed that McKinley's proposal met the requirement.

Given this evidence, we agree with the superior court's conclusion that Bachner failed to present a genuine issue of material fact regarding the public transportation issue.  Madson and the committee followed a fair process to determine whether the McKinley proposal satisfied the RFP.  They relied on the bus stop noted in the McKinley proposal, their call to Miller at the Fairbanks North Star Borough, and their discussion with Jones.  Miller disputes the details of the call, but the letter from Lyons confirms that the committee members were not acting in bad faith when they concluded that the Borough could make public transportation available.  We therefore affirm the superior court's decision on the public transportation issue.

### 3.    The bid protest/refusal to stay issue

In March 2002, after consulting with Chief Procurement Officer Jones and another state employee, Madson denied Bachner's bid protests.[40]  On March 12, Madson refused to stay the notice of award, stating that the current lease for the DOT building would end September 30, 2002.  On March 22, Madson stated that the current lease expired on September 20, 2002.

Before the superior court, Bachner argued that Madson denied the bid protests in bad faith.  The superior court rejected this argument, explaining that at the summary judgment stage malice cannot be a disputed question of fact, unless the record contains some objective evidence that would support an inference of malice.

Bachner's argument was based principally on Madson's inconsistent statements regarding the end date of the existing lease.  Madson appears to have made a mistake about the ending date for the lease when she denied a stay of the award during Bachner's bid protest appeals.  But there is nothing in the record that indicates that this

---

        [40]    *See State, Dep't of Admin. v. Bachner Co.*, 167 P.3d 58, 60 (Alaska 2007).

mistake was made in bad faith. We therefore affirm the superior court's decision on the bid protest issue.

### 4. The Weed scoring issue

Before the superior court, Bachner claimed that Weed acted in bad faith by lowering his score for the Bachner proposal in order to counteract Madson's overly high scores for Bachner. Furthermore, Bachner alleged that Weed told Jerry Bowers, the principal owner of Bowers Investment, that he was opposed to the Bachner proposal because if it won, Weed and his staff would have to spend the next 40 years split between the ground floor and the basement in the Bachner building. And Bachner alleged that Weed told Bowers that Bennett and Senkow had pressured him not to vote for the Bachner proposal.

Weed's affidavit states that after the first round of scoring he became aware of the identity of the building described in the Bachner proposal and considered his personal knowledge of that building. Weed and Chief Procurement Officer Jones stated that the committee members may appropriately consider their personal knowledge and vary their scores between rounds. Weed argued that his score change to remedy perceived bias was a mistake in the scoring process and did not establish bad faith.

The superior court concluded that Weed may have placed "undue emphasis on indoor environment" when Weed considered that his staff would be split between basement and ground floors for the next 40 years. The court reasoned that Weed's attempt to correct the perceived bias of other committee members was a misunderstanding of his role in the procurement process. The court compared the facts to *J & S Services*, *Inc. v. Tomter*[41] and concluded that the factual allegations did not support an inference that Weed acted in bad faith.

---

[41]    139 P.3d 544, 548 (Alaska 2006).

A claim of unfair scoring of a public bid proposal does not show bad faith unless the misconduct is motivated by malice or personal interests.[42] Bower's affidavit suggests that Weed "shuffled" his scores to offset what he perceived to be Madson's unfair favoritism toward the Bachner proposal, and that Weed was possibly motivated to avoid getting poor office space for his staff in the Bachner building. But Weed's motivation to get the best office space was a public purpose, not a bad faith attempt to pursue his personal interests. We therefore affirm the superior court's decision on the Weed scoring issue.

C.    **The Committee Members Are Also Protected By The Exclusive Remedy Statute.**

The exclusive remedy state statute provides: "Notwithstanding AS 44.77 or other law to the contrary, AS 36.30.560 - 36.30.699 and regulations adopted under those sections provide the exclusive procedure for asserting *a claim against an agency* arising in relation to a procurement under this chapter."[43] In *Weed v. Bachner Co.*, Justice Fabe relied on this statute in her concurring opinion, explaining, "[c]laims against procurement committee members in their individual capacity for performing usual and proper duties might fairly be characterized as 'claims against an agency' even where bad faith is alleged; they would thus be barred by the exclusive remedy provision."[44] The superior court found that because Bachner had not presented a genuine issue of material fact about bad faith and because the alleged conduct occurred within the scope of the committee's official duties, the exclusive remedy provision barred Bachner's claims.

In this case, all of the committee members were acting within the scope of their duties to review the RFP responses. Even Weed's decision to "shuffle his scores"

---

[42]    *See id.* at 545.

[43]    AS 36.30.690 (emphasis added).

[44]    230 P.3d 697, 704 (Alaska 2010) (Fabe, J., concurring).

was related to his official responsibility to identify the best proposal and not by any personal motive or advantage. And as we explained above, Bachner presented no genuine issue of material fact regarding bad faith acts by the committee members. We therefore do not have occasion to consider whether the exclusive remedy provision bars suits against individual committee members for bad faith acts done within the course and scope of official duties.[45] However, we hold that suits against individual procurement officers for acts within the course and scope of their official duties can fairly be characterized as "claims against an agency." In this case, there is no dispute that the committee members acted within the course and scope of their official duties. Therefore, we affirm the superior court's holding that the exclusive remedy provision bars Bachner's suit.

**D.**     **The Superior Court Did Not Abuse Its Discretion By Denying The Motion For Reconsideration.**

After the superior court's grant of summary judgment, Bachner moved for reconsideration and asked the court to consider Jerry Bower's December 30, 2011 supplemental affidavit. Citing Civil Rule 77(k) and *Katz v. Murphy*,[46] the superior court reasoned that the Rule "does not allow the moving party to raise new grounds as a basis for reconsideration" and denied both motions.

On appeal, Bachner argues that the superior court erred by refusing to consider Bowers's supplemental affidavit because the superior court's initial decision invented a new legal test by requiring affirmative proof of targeted animosity rather than

---

[45]     The committee members argue that a finding of bad faith "is not dispositive of a 'course and scope' determination." They argue that even if an official acts in bad faith, the exclusive remedy provision bars bad faith claims against the official so long as the official acts within the course and scope of official duties.

[46]     165 P.3d 649, 661 (Alaska 2007).

inferential proof. Bachner claims that Bowers's affidavit could have met the new legal test.

The committee members argue that the superior court did not abuse its discretion in refusing to consider Bowers's affidavit because it is hearsay, in that it recites excerpts of an informal interview with a witness, John Burns. The committee members also argue that the affidavit was untimely because it was signed the day after the court issued its summary judgment order. In the alternative, the committee members argue that any error was harmless because Bowers's affidavit would not have changed the outcome.

Bachner's claims that the superior court enunciated a new standard of "targeted animosity" for qualified immunity is incorrect. The superior court described bad faith variously as "targeted animosity," "malice," "corruption," and "evil motive." In *J & S Services*, we described bad faith as open "*animosity toward*" the bidder.[47] "Targeted animosity" is synonymous with this characterization. Thus, "targeted animosity" is not a new statement of the bad faith mental state required to defeat qualified immunity.

Generally, a motion for reconsideration cannot be based on new information or arguments.[48] The supplemental affidavit from Jerry Bowers was new information that could have been submitted previously. Where a party has sufficient opportunity to introduce evidence but waits until after the close of evidence, a superior court does not abuse its discretion in refusing to consider the evidence. The court did not commit an

---

[47] 139 P.3d 544, 550-51 (Alaska 2006).

[48] Alaska R. Civ. P. 77(k); *see also Katz*,165 P.3d at 661.

abuse of discretion by applying the normal rule that this untimely information should not be considered.[49]

E. **The Superior Court Did Not Abuse Its Discretion In Awarding Attorney's Fees.**

The court found the committee members were the prevailing parties and awarded the State $93,871.85 in fees and costs under Alaska Civil Rules 79 and 82. Bachner argues that the superior court should not have awarded fees because the committee members were represented by State attorneys and did not personally incur any legal costs. Bachner claims that the purpose of Rule 82 is to "partially compensate a successful litigant for actual fees incurred." This is incorrect. The purpose of Rule 82 is to "afford reasonable partial compensation for attorney's fees to the winning civil litigant."[50] The Rule does not "preclude a court from [awarding] fees greater than those agreed to by an attorney charging no fees or lower than usual fees."[51] Thus, the Rule does not limit awards to "actual fees incurred" as Bachner argues.[52] And contrary to

---

[49]     *See Yang v. Yoo*, 812 P.2d 210, 217 (Alaska 1991) (citing *Hutchins v. Schwartz*, 724 P.2d 1194, 1197 (Alaska 1986)); *see also State, Dep't of Natural Res. v. Transamerica Premier Ins. Co.*, 856 P.2d 766, 776 (Alaska 1993) (striking down post-trial affidavit). *Cf. Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.*, 584 P.2d 15, 20 (Alaska 1978) (holding that superior court erred by refusing to consider deposition where parties frequently referred to it, but failed to formally move to publish the deposition).

[50]     *Municipality of Anchorage v. Gentile*, 922 P.2d 248, 264 (Alaska 1996) (quoting *Wise Mech. Contractors v. Bignell*, 718 P.2d 971, 973 (Alaska 1986)).

[51]     *Id.* at 264 n.22 (citation omitted).

[52]     Further, the committee members correctly point out that adopting Bachner's proposed rule (that the State can never recover funds when it indemnifies its committee members) would allow litigants to file frivolous suits against committee members in their official capacity, thereby forcing the State to expend resources with no hope of compensation.

-20-                                                                    6848

Bachner's assertions, the amended final judgment nowhere names the State as a "party." Instead the court made the fees payable to the State. Fees are properly payable to the State when it expends resources defending its committee members.[53]

Bachner also argues that fees should not have been awarded because the State acted as "in-house counsel." In response, the committee members correctly note that attorney's fees can be awarded for work performed by Attorney General's Office staff acting as in-house counsel.[54] Even though the committee members were not in privity with the State for the purpose of collateral estoppel, the question of attorney's fees is a separate one. Because State attorneys defended the committee members in their individual capacities, it is proper to make any fee award payable directly to the State.

Finally, Bachner argues that it is a public interest litigant and therefore protected from adverse fee awards. Again, the committee members correctly note that, even if public interest litigants are protected from adverse fee awards under AS 09.60.010(b)(3)(I), Bachner cannot be considered a public interest litigant due to its significant financial interest in this case. We therefore affirm the superior court's fee award.

## V.     CONCLUSION

Bachner failed to present a genuine issue of material fact that the committee acted in bad faith, and we conclude that the exclusive remedy statute bars Bachner's

---

[53]     *See Alpine Indus., Inc. v. Feyk*, 22 P.3d 445, 447, 450 (Alaska 2001) (affirming superior court's award of attorney's fees to the State for cost of defending official).

[54]     *Greater Anchorage Area Borough v. Sisters of Charity of House of Providence*, 573 P.2d 862, 863 (Alaska 1978) ("Nothing in [*Cont'l Ins. Co. v. U.S. Fid. & Guar. Co.*, 552 P.2d 1122, 1128 (Alaska 1976)] was intended to alter our long-standing practice of awarding attorney's fees to public entities who litigate chiefly, and often entirely, through in-house counsel.").

claim.  For these reasons, we AFFIRM the superior court's grant of summary judgment in favor of all committee members.  We also affirm the superior court's fee award.

**6848**